IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Amanda Verde, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21 C 50092 |
| | ) | |
| vs. | ) | |
| | ) | Judge Philip G. Reinhard |
| Confi-Chek, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons stated below, defendant's Rule 12(b)(1) motion to dismiss [18] for lack of subject matter jurisdiction is granted.  Plaintiff's complaint [1] is dismissed, without prejudice, for lack of subject matter jurisdiction.  Plaintiff is granted until October 29, 2021 to file an amended complaint properly alleging subject matter jurisdiction.  If not repled by that date, the dismissal will become final and this case will be closed.

## STATEMENT-OPINION

Plaintiff, Amanda Verde, a citizen of Illinois, individually and on behalf of all others similarly situated, brings this action against defendant, Confi-Chek, Inc., a California corporation with its principal place of business in California.[1]  The case is brought as a class action and alleges that plaintiff, along with most members of the proposed class, are citizens of states other than California and that the aggregate claims of all members of the proposed class are in excess of $5,000,000.00.  Jurisdiction, therefore, is properly alleged under 28 U.S.C.§ 1332(d)(2)(A). Plaintiff alleges she, and the other putative class members, were injured by defendant's violation of the Illinois Right to Publicity Act, 765 ILCS 1075/1 et seq. ("IRPA").  Defendant moves to dismiss [18] for lack of subject matter jurisdiction, lack of personal jurisdiction, and for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), (2) & (6).

**Facts**

Defendant owns and operates a website — peoplefinders.com.  Upon accessing this website, a person may enter any person's first and last name in a search bar on the homepage and generate a listing of search results of people with that name.  Each search result corresponds to an actual person with the name that was entered pulled from public records.  The search result provides a limited, free preview including the searched individual's name, age, current and former cities, relatives, and other identifying information.  It also provides an opportunity to get an "Instant Report" on the searched individual (or any other individual in its database) by purchasing a "Search Report" or "Background Report" on the individual.  It also offers the option of purchasing a monthly subscription which gives access to "Search Reports" or "Background Reports" on any individuals in the database.

---

[1]  The complaint also named Peoplefindersdaas, Inc., a California corporation with its principal place of business in California, as a defendant but it has been voluntarily dismissed as a defendant.

Neither plaintiff nor any class members provided defendant with written consent to use their identities in advertisements. Plaintiff discovered that her name being entered on defendant's website generated a preview that showed her name, age, city of domicile, and relative's names. Plaintiff believes it is reasonable that others would be able to identify her from this information because the information was accurate. The complaint contains an image of a search result on defendant's website for "Amanda Verde" which plaintiff says identifies her. Plaintiff is not a customer of defendant. Plaintiff has not been compensated by defendant in any way for use of her identity.

**IRPA**

The IRPA provides that "[t]he right to control and to choose whether and how to use an individual's identity for commercial purposes is recognized as each individual's right of publicity," 765 ILCS 1075/10. Section 30 of the IRPA provides that "[a] person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent." 765 ILCS 1075/30. A person who violates Section 30 may be liable for the greater of "(1) actual damages, profits derived from the unauthorized use, or both; or (2) $1,000." 765 ILCS 1075/40. A court may grant injunctive relief "as may be appropriate under this Act." 765 ILCS 1075/50.

"'Identity' means any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." 765 ILCS 1075/5.

"'Individual' means a living or deceased natural person, regardless of whether the identity of that individual has been used for a commercial purpose during the individual's lifetime." *Id.*

"'Name' means the actual name or other name by which an individual is known that is intended to identify that individual." *Id.*

"'Commercial purpose' means the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." *Id.*

The IRPA does not apply to "use of an individual's identity for non-commercial purposes, including any news, public affairs, or sports broadcast or account, or any political campaign." 765 ILCS 1075/35(b)(2).

The rights and remedies provided by the IRPA supplant the common law right of publicity. 765 ILCS 1075/60. However, pleading a statutory claim under the IRPA requires pleading essentially the same three elements that were required under the common law: (1) an appropriation of the plaintiff's identity, (2) without the plaintiff's written consent, and (3) for defendant's commercial purposes. *See Blair v. Nevada Landing Partnership*, 859 N.E.2d 1188, 1192 (Ill. App. 2006).

**Standing**

Defendant argues plaintiff lacks Article III standing to maintain this action in federal court. The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 856, 136 S.Ct. 1540, 1547 (2016). To have standing, "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing. Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms." *TransUnion LLC v. Ramirez*, __ U.S. __, 141 S.Ct. 2190, 2200 (2021). A statutory violation alone does not confer standing; plaintiff must show that the violation caused her concrete harm. *Wadsworth v. Kross, Lieberman & Stone, Inc.*, No. 19-1400, 2021 WL 3877930, * 2 (7th Cir. Aug. 31, 2021). "Article III of the Constitution does not distinguish procedural from substantive claims; it makes injury essential to all litigation in federal court." *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1072 (7th Cir. 2020). The injury must be "concrete and particularized" not "conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Threatened injury must be "certainly impending" and allegations of possible future harm are not sufficient to constitute an injury in fact. *Clapper v. Amnesty International U.S.A.*, 568 U.S. 398, 409 (2013).

"Rule 12(b)(1) is the means by which a defendant raises a defense that the court lacks subject-matter jurisdiction. This defense can take the form of a facial or a factual attack on the plaintiff's allegations. A facial attack tests whether the allegations, taken as true, support an inference that the elements of standing exist." *Bazile v. Finance Systems of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020) (citations omitted). Plaintiff's claim is that she was injured by defendant's use of her identity for commercial purposes, without her consent, in violation of the IRPA. Therefore, for standing purposes, the question is whether her complaint plausibly alleges that the IRPA violation caused her a concrete injury not a conjectural or hypothetical one. *See Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) (same "plausibility" standard used in evaluating facial challenges to claims under Ruler 12(b)(6) is used in analyzing facial challenges to subject matter jurisdiction under Rule 12(b)(1)).

Plaintiff alleges that she "discovered" that her name being entered on defendant's website generated a preview that showed her name, age, city of domicile, and relative's names. She alleges this personal identifiable information of hers, disclosed by defendant, has economic value and that these aspects of her identity are valuable to online advertisers among others. She alleges that defendant uses her identity to advertise defendant's for-profit services and that she has not been compensated in any way for this use of her identity.

Defendant argues plaintiff's allegations are insufficient to plausibly allege a concrete injury because "she cannot allege anyone else has ever actually searched her name" on defendant's website, much less viewed the "free preview" associated with such a search. Absent any allegation that defendant actually presented a "free preview" of her report to any consumer,

defendant contends plaintiff's alleged injury is "conjectural or hypothetical." Defendant also contends plaintiff does not allege that she would have been better off had defendant refrained from its alleged violation of the IRPA because she does not plausibly allege that her personal data had any economic value to her and a claimed injury in fact for standing purposes cannot be based solely on defendant's gain but must be based on plaintiff's loss.

In her response brief, plaintiff confines her response to defendant's argument that her personal data lacked any economic value to her and that standing cannot be based solely on a claim of defendant's gain rather than plaintiff's loss. She does not respond to defendant's argument that the complaint does not allege defendant ever presented a "free preview" of her report to anyone or that anyone had actually searched her name on defendant's website.

Plaintiff argues defendant's violation of the IRPA presented an appreciable risk of harm to the underlying concrete interest the Illinois legislature sought to protect in enacting the IRPA. The underlying interest sought to be protected by the IRPA was the same interest previously protected by the common law right of publicity/tort of appropriation of likeness. The IRPA codified this common law right. 765 ILCS 1075/60. Plaintiff maintains that alleging the IRPA violation-- (1) an appropriation of the plaintiff's identity, (2) without the plaintiff's written consent, and (3) for defendant's commercial purposes — is, therefore, enough to meet the injury-in-fact requirement for standing.

The Supreme Court recently addressed Article III standing in *TransUnion LLC v. Ramirez*, __U.S. __, 141 S.Ct. 2190 (2021). TransUnion is a credit reporting agency. It compiles personal and financial information about individual consumers to create consumer reports for use by lenders, landlords, and others that request information about the creditworthiness of individual consumers. TransUnion also offered an add-on product called OFAC Name Screen Alert. When a customer opted into the Name Screen service, TransUnion would use third-party software to compare the consumer's name against the U.S. Department of the Treasury's Office of Foreign Asset Control's (OFAC) list of "specially designated nationals" who threaten U.S. national security. The OFAC list includes terrorists, drug traffickers, or other serious criminals with whom it is generally unlawful to transact business. If the consumer's first and last name matched the first and last name of an individual on the OFAC list, TransUnion would place an alert on the consumer's credit report indicating the consumer's name was a "potential match" to a name on the OFAC list. TransUnion did not compare any data other than first and last name. When Ramirez tried to buy a car, the dealership ran a credit check on him through TransUnion which alerted that his name matched a name on the OFAC list. The dealership said they would not sell him the car because his name was on a "terrorist list."

Ramirez sued TransUnion for violating the Fair Credit Reporting Act alleging TransUnion, by using the Name Screen product, failed to follow reasonable procedures to ensure the accuracy of information in his credit file. Ramirez sought, and obtained, certification of a class. The parties stipulated the class contained 8,185 members that TransUnion had alerted their names were considered a potential match to names on the OFAC list. 1,853 of the class members (including Ramirez) had their credit reports disseminated to potential creditors and 6,332 class members did not have their credit reports disseminated to potential creditors. The Supreme Court ruled only Ramirez, and the class members whose credit reports had been

disseminated to potential creditors, had suffered a concrete harm that qualified as an injury in fact giving them Article III standing.

In reaching this decision, the Court agreed with the plaintiffs "that the publication to a third party of a credit report bearing a misleading OFAC alert injures the subject of the report" and that "this injury bears a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—namely, the reputational harm associated with the tort of defamation." *TransUnion*, 141 S.Ct. at 2208. The Court observed that "[u]nder longstanding American law, a person is injured when a defamatory statement that would subject him to hatred, contempt, or ridicule is published to a third party." *Id.* (quotation marks and citation omitted). As to the other class members, the Court held they lacked standing because the "mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm." *Id.* at 2210. The Court analogized the harm from the presence of inaccurate or misleading information sitting undisseminated in a company database to the harm of a defamatory letter written and then stored in a desk drawer stating "[a] letter that is not sent does not harm anyone, no matter how insulting the letter is." *Id.* Publication to a third party is required for a plaintiff to be injured by a defamatory statement. Likewise, dissemination to a third party of inaccurate or misleading information collected by a credit reporting agency is required for a plaintiff to be injured by that inaccurate or misleading information. Unsent to a third party, the inaccurate or misleading information harms no one. "[T]he retention of information lawfully obtained, without further disclosure, traditionally has not provided the basis for a lawsuit in American courts, meaning that the mere existence of inaccurate information in a database is insufficient to confer Article III standing." *Id.* at 2209 (quotation marks and citations omitted).

Here, it is an alleged violation of the right of publicity, as codified by the IRPA, rather than a statutory analog to the tort of defamation, that plaintiff claims harmed her. This right of publicity is a traditionally recognized basis for a lawsuit in American courts and a violation of the IRPA certainly could cause a concrete injury to an individual whose identity was used for commercial purposes without her consent. However, applying *TransUnion* to plaintiff's complaint, she has not alleged a concrete injury caused by defendant's alleged IRPA violation.

Plaintiff has not alleged any third party ever searched her name or viewed her "free preview" on defendant's website. She alleges she discovered that her name being entered on defendant's website generated a preview that showed her name, age, city of domicile, and relative's names and that she believes it is reasonable that others would be able to identify her from this information because the information was accurate, but she does not allege defendant ever provided any information about her to any third party. Thus, she is in a like position to the *TransUnion* class members who learned their credit reports indicated their names were considered a potential match to names on the OFAC list but whose credit reports had not been disseminated to potential creditors. Neither the fact TransUnion had placed this inaccurate and misleading information in the class members credit reports nor the fact the class members learned that the inaccurate and misleading information was in their credit reports constituted a concrete injury to them. Without dissemination to a third party, the inaccurate and misleading information did not harm them.

Likewise, here, plaintiff fails to allege a concrete injury because she does not allege defendant disclosed any of her information to any third party.  "[T]he retention of information lawfully obtained, without further disclosure, traditionally has not provided the basis for a lawsuit in American courts," *id.*, and plaintiff has not alleged any third party has entered her name and viewed her information on defendant's website.

Recently, in *Lukis v. Whitepages Incorporated*, No. 19 C 4871, 2021 WL 3022319 (N.D. Ill. July 16, 2021) (Feinerman, J.) another court in this district found the plaintiffs there had alleged Article III standing in a complaint with substantially similar allegations to those here. The *Lukis* plaintiffs alleged that "they discovered that Whitepages used their identities in advertisements, that they never provided consent for Whitepages to do so, that the use caused them emotional distress, and that they do not want Whitepages to use their identities for any commercial purpose." *Id.* at * 3.  *Lukis* found that the IRPA codified the common law right of publicity/appropriation of likeness tort and reasoned that "[i]t necessarily follows, under the analysis articulated in *Spokeo* and recently reiterated in *TransUnion*, that an IRPA violation inflicts a concrete injury-in-fact under Article III." *Id.* at * 4.  However, as discussed above, this court reads *TransUnion* to require an allegation of disclosure to a third party to allege a concrete injury caused by a violation of the IRPA; alleging only that the statute was violated is not enough to allege an injury in fact.

The complaint's prayer for relief also asks for "all injunctive relief the court finds appropriate."  The IRPA allows for injunctive relief "as may be appropriate under this Act." 765 ILCS 1075/50.  When seeking injunctive relief for a "threatened injury", the threatened injury must be "certainly impending" to constitute and injury in fact for purposes of Article III standing. *Clapper*, 568 U.S. at 409.  The complaint does not contain any allegations of any certainly impending threatened harm so Article III standing for injunctive relief has not been alleged.

**Conclusion**

Because the complaint does not allege Article III standing, the complaint must be dismissed for lack of subject matter jurisdiction.  Because the court lacks subject matter jurisdiction, it will not address defendant's arguments for dismissal on other grounds.

For the foregoing reasons, defendant's Rule 12(b)(1) motion to dismiss [18] for lack of subject matter jurisdiction is granted.  Plaintiff's complaint [1] is dismissed, without prejudice, for lack of subject matter jurisdiction.  Plaintiff is granted until October 29, 2021 to file an amended complaint properly alleging subject matter jurisdiction. If not repled by that date, the dismissal will become final and this case will be closed.

Date: 9/20/2021                                            ENTER:

*Philip G. Reinhard*
United States District Court Judge

Electronic Notices. (LC)